Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Marvin Isabel Hernandez, | |
| *Plaintiff*, | |
| v. | Case No. 4:20-cv-2852 |
| Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security; Kenneth T. Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services; Wallace L. Carroll, Houston Field Office Director of the U.S. Citizenship and Immigration Services, | Date: August 14, 2020 |
| *Defendants*. | |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

This is a complaint for relief under the Administrative Procedure Act ("APA"). The Plaintiff, Marvin Isabel Hernandez, files the instant complaint against Defendants because the U.S. Citizenship and Immigration Services ("USCIS"), a federal agency within the Department of Homeland Security ("DHS"), violated the APA when it denied Plaintiff's I-485, Application to Register Permanent Residence or Adjust Status ("I-485 Application"), solely based on lack of jurisdiction. *See* Exhibit 1—Denial Decision.

Plaintiff seeks *de novo* review of the USCIS's final agency decision and a declaratory judgement that: (1) the USCIS has jurisdiction to adjudicate her I-485 Application; and (2) it acted arbitrarily, capriciously, and not in accordance with the federal regulations and Board of Immigration Appeals ("BIA") case law, when it denied said I-485 Application. Plaintiff also seeks relief under the APA to compel the USCIS to reopen and to adjudicate her I-485 Application on the merits.

The instant action is being filed against the following Defendants: Chad F. Wolf, in his purported official capacity as the Acting Secretary of the DHS; Kenneth T. Cuccinelli, in his purported official capacity as the Acting Director of the USCIS; and Wallace L. Carroll, in his official capacity as the Houston Field Office Director of the USCIS.

## I.  INTRODUCTION

1. Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Division C of Pub. L. 104-208, 110 Stat. 3009-546 (1996), aliens in immigration court proceedings were placed in either exclusion or deportation proceedings.[1] In exclusion proceedings, the alien had to have demonstrated that he or she was admissible to the United States. By contrast, in deportation proceedings, the former Immigration and Naturalization Services ("INS"), had to meet its burden to show that the alien was deportable.

2. Whether an alien was placed in exclusion or deportation proceedings turned on whether the alien had made an "entry." Persons in exclusion proceedings were deemed *not* to have "entered" the United States. Therefore, persons in exclusion proceedings are in the same situation as "arriving aliens" now, i.e., as noncitizens who also are deemed not to have been admitted to the United States. 8 U.S.C. § 1101(a)(13)(B). Essentially, "arriving aliens" are considered, in legal terms, to be standing at the border and not technically in the United States.

3. Whether an alien was in exclusion proceedings and has a final order of exclusion, or whether an alien is currently in removal proceedings or has a final removal order, they are able to adjust their status to that of a lawful permanent resident

---

[1] After the enactment of IIRIRA, exclusion and deportation proceedings were consolidated into one type of proceedings: removal proceedings. *See* 8 U.S.C. § 1229a.

with the USCIS, in accordance with the USCIS's long-standing prior policy. *See* Exhibit 2—Previous USCIS Policy Manual at Vol. 7, Part A, Ch. 3, Sec. D; Exhibit 3—Previous Policy Memorandum; *see also Matter of Yauri*, 25 I&N Dec. 103, 106-07 (BIA 2009) (finding that "arriving aliens" with final removal orders can only adjust their status with USCIS); *Matter of Castro*, 21 I&N Dec. 379 (BIA 1996) (finding that jurisdiction over adjustment applications filed by aliens in exclusion proceedings lies with the INS).

4.  Sometime in 2018, the USCIS began arbitrarily denying or administratively closing *some* adjustment of status applications, but not others, even though they had the exact same fact pattern, based on the purported lack of jurisdiction, in direct violation of its policy manual and memorandum in place at the time, case law, and the federal regulations. This is what happened with Plaintiff's case herein, when the USCIS denied her I-485 Application based on claimed lack of jurisdiciton. *See* Exhibit 1, *supra.*

5.  Plaintiff has exhausted her remedies in this case and is not required to do anything further. The USCIS decision explicitly states that there is no appeal from its decision to deny Plaintiff's I-485 Application. *Id*. It is thus considered a "final" agency action subject to judicial review by this Court for which there can be no judicially-imposed exhaustion requirement. *See Darby v. Cisneros*, 509 U.S. 137, 147 (1993); *see also* 5 U.S.C. § 704.

4

## II.   JURISDICTION AND VENUE

6.   This action arises under the Immigration and Nationality Act ("INA"), 8 U.S.C.

§§ 1101 *et seq.*, and the APA, 5 U.S.C. §§ 701 *et seq*. Because this action arises

under the federal laws of the United States, subject-matter jurisdiction is proper

under 8 U.S.C. § 1331.

7.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because all

relevant actions, including the submission and denial of Plaintiff's I-485

Application, occurred in the USCIS's field office in Houston, Texas.

## III.    PARTIES

8.   Plaintiff, Marvin Isabel Hernandez, is a resident of Houston, Texas. *See* Exhibit

1, *supra*.

9.   Defendant, Chad F. Wolf, is the purported Acting Secretary of the DHS. He is

sued in his official capacity. He may be served at 2707 Martin Luther King Jr.

Ave. SE, Washington, D.C. 20528-0485.

10.   Defendant, Kenneth T. Cuccinelli, is the purported Acting Director of the

USCIS. He is sued in his official capacity. He may be served at 20 Massachussetts

Ave., Room 4210, Washington D.C. 20529.

11.   Defendant, Wallace L. Carroll, is the USCIS Houston Field Office Director. He

is sued in his official capacity. He may be served at 20 Massachussetts Ave.,

Room 4210, Washington D.C. 20529.

## IV.   STATUTORY AND REGULATORY BACKGROUND

12. Under 8 U.S.C. § 1255(a), an alien may adjust his or her status to that of a lawful permanent resident provided that: (1) the alien was inspected and admitted or paroled into the United States; (2) the alien makes such an application for adjustment of status; (3) the alien is eligible to receive an immigrant visa; (4) the alien is admissible to the United States; and (5) a visa is immediately available to him or her when the adjustment of status application is filed.

13. The USCIS has jurisdiction to adjudicate an adjustment of status application unless the immigration judge has jurisdiction. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

14. The Immigration Judge has exclusive jurisdiction to adjudicate any application for adjustment of status if the alien is in removal or deportation proceedings (other than an "arriving alien"). 8 C.F.R. § 1245.2(a)(1).

15. An "arriving alien" is one who is "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1.2.

16. "An arriving alien remains an arriving alien even if paroled pursuant to section

6

212(d)(5) [8 U.S.C. § 1182(d)(5)] of the Act." *Id.*

17. The immigration judge can only have jurisdiction over adjustment applications filed by "arriving aliens" if: (1) the alien properly filed the application with the USCIS while the alien was in the United States.; (2) the alien departed and returned to the U.S. pursuant to a grant of advance parole; (3) the application was denied by the USCIS; and (4) the DHS placed the alien in removal proceedings *after* the alien's return to the United States on advance parole or *after* the application was denied. 8 C.F.R. § 1245.2(a)(1)(ii).

18. If the USCIS denies an adjustment of status application on the grounds that it lacks jurisdiction to adjudicate it, the denial would be considered the final agency action in the case. As such, no administrative remedies would be left available to an applicant and the only option is to judicially assert a violation under the APA, 5 U.S.C. §§ 702, 704.

19. "Agency action" is defined to include the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent, or denial thereof, or failure to act. 5 U.S.C. § 551(13).

20. The reviewing court is authorized to compel action by an agency, and hold its actions unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

## V.    FACTUAL BACKGROUND

21. Effective March 1, 2003, the DHS assumed responsibility for the functions of the agency formerly known as the "Immigration and Naturalization Service." The Secretary of DHS is now vested with "[a]ll authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws." 8 C.F.R. § 2.1.

22. The USCIS is a bureau within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS is responsible for accepting and adjudicating all applications for adjustment of status unless, as detailed above, jurisdiction lies with the immigration judge.

23. The USCIS Houston Field Office is an agency within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS Houston Field Office is the official with jurisdiction over the denail of Plaintiff's I-485 Application.

24. Plaintiff is a native and citizen of El Salvador. *See* Exhibit 4—Parole Document. She was ordered removed from the United States on October 29, 1996. *See* Exhibit 1, *supra.*

25. Plaintiff was last paroled into the United States by the DHS, pursuant to a valid parole document, on May 17, 2019. *See* Exhibit 4, *supra.*

26. By virtue of being the beneficiary of an I-130 family visa petition filed on her

behalf, Plaintiff filed her I-485 Application with the USCIS on January 3, 2020. *See* Exhibit 1, *supra*. However, instead of adjudicating Plaintiff's I-485 Application on the merits, the USCIS denied it on the grounds that it lacked jurisdiction to adjudicate it. *Id.*

27. In denying the I-485 Application, the USCIS found that because Plaintiff had a final order of removal, she was still in removal proceedings. *Id*. Additionally, the USCIS determined that Plaintiff was not an "arriving alien" because she entered the United States without inspection. *Id*. As such, the USCIS concluded that Plaintiff could only adjust her status to that of a lawful permanent resident with the immigration judge. *Id.*

28. Given the USCIS's decision denying Plaintiff's I-485 Application, and the fact that Plaintfiff cannot seek adjustment of status with the Immigration Court, there are no avenues for relief for Plaintiff. Therefore, she now files this Complaint requesting that the Court compel the USICS to reopen and adjudicate her I-485 Application on the merits.

## VI.   CLAIMS FOR RELIEF

### 1.  Count 1—Violation of the APA (Arbitray, Capricious, Abuse of Discretion, and Not in Accordance with the Law)

29. Plaintiff incorporates by reference the allegations in paragraphs 1-28.

30. Plaintiff contends that under the APA, the USCIS's denial of her I-485 Application was "arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law." *See* 5 U.S.C. § 706(2)(A).

31. The U.S. Supreme Court has held that an agency's actions may be considered arbitrary, capricious, or an abuse of discretion if said actions inexplicably depart from the agency's own course of adjudication, regulations, or policies. *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion.'").

32. In the case at bar, the USCIS's general policy was that it retained sole jurisdiction over applications for adjustment of status filed by "arriving aliens" irrespective of whether they had TPS and final removal orders. *See* Exhibit 2, *supra* at Vol. 7, Part A, Ch. 3, Sec. D; Exhibit 3, *supra*. By irrationally reversing course and providing no explanation why it did so, despite the fact that the law provides that the USCIS does have jurisdiction, the agency has acted arbitrary, capriciously, and abused its discretion.

33. Moreover, Plaintiff maintains that decision of the USCIS is not the product of reasoned decisionmaking. As noted by the D.C. District Court, to survive arbitrary and capricious review, "an agency action must be the product of

10

reasoned decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012). In the case at bar, the USCIS's decision to deny Plaintiff's I-485 Application was not "the product of reasoned decisionmaking" because, as discussed further below, the case law and regulations expressly state that the USCIS retains jurisdiction over adjustment applications filed by "arriving aliens," irrespective of whether they have TPS and final removal orders.

34. Lastly, Plaintiff submits that the USCIS's decision is arbitrary and capricious because the USCIS blatantly ignored the fact that Plaintiff was paroled into the United States and, as a result, was clearly inspected. *See* Exhibit 1, *supra*.

35. The Supreme Court has held that an agency action is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem" or "has offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicles Mrfs. Ass'n of the U.S v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)

36. In this case, by ignoring the fact that Plaintiff was paroled, and thus, an "arriving alien," the USCIS "entirely failed to consider an important aspect of the problem" and additionally, "has offered an explanation for its decision that runs counter to the evidence before the agency." Therefore, the USCIS's decision is clearly arbitrary and capricious.

37. In addition, the USCIS's denial of Plaintiff's I-485 Application is not in

accordance with the law.

38. The applicable federal regulations and the BIA state that the USCIS has jurisdiction to adjudicate an adjustment of status application filed by an "arriving alien," a point which the DHS has even conceded. *See Matter of Yauri*, 25 I&N Dec. at 106-07 ("DHS has stated that it recognizes that the USCIS's jurisdiction over the adjustment application of an arriving alien exists regardless of whether there is an unexecuted removal order that remains outstanding against the alien…[m]oreover, we emphasize that the existence of a final order of removal does not preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status."); *see also* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

39. An "[a]rriving alien [is] an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2.

40. A person who is paroled into the United States would be considered an "arriving alien" because while they are allowed to enter, they are not considered admitted into the United States. *See* 8 U.S.C. §§ 1101(a)(13)(B) ("An alien who is paroled under section 1182(d)(5) of this title or permitted to land temporarily as an alien crewman shall not be considered to have been admitted."); *see also Matter of Oseiwusu*, 22 I&N Dec. 19, 20 (BIA 1998) (holding that an alien who enters the United States with a grant of parole is an "arriving alien").

41. "An arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked."). 8 C.F.R. § 1.2.

42. In this case, Plaintiff is an "arriving alien" because she traveled and then returned to the United States at a port-of-entry as an applicant for admission pursuant to her grant of advance parole. *See* Exhibit 4, *supra*.

43. Inexplicably, the USCIS contends that Plaintiff is not an "arriving alien" because she entered the United States without inspection. *See* Exhibit 1, *supra*. That is clearly contradictory to the evidence because Plaintiff became an "arriving alien" when she traveled and then returned to the United States at a port-of-entry as an applicant for admission pursuant to the grant of advance parole and, as a result, she was subject to inspection at the time she was allowed back into the country on her parole documents. *See* Exhibit 4, *supra*.

44. Plaintiff is also not in removal proceedings and does not have an unexecuted order of removal because said order was fully executed when she departed the country on an advance parole. *See* 8 U.S.C. § 1101(g) ("…any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law"); 8 C.F.R. § 1241.7 ("Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be

13

considered to have been deported, excluded and deported, or removed"); *Matter of Bulnes-Nolasco*, 25 I&N Dec. 57, 58 (BIA 2009) (affirming that an alien's departure from the United States while under an outstanding order of deportation has the effect of executing the deportation order and bringing finality to the deportation proceedings); *Stone v. INS*, 514 U.S. 386, 398 (noting that deportation orders are "self-executing").

45. As noted in the attached exhibits, the USCIS has even conceded in the past that an alien who departs on advance parole is considered to have executed his or her removal order. *See* Exhibit 5—Adjustment of Status Decision 1; Exhibit 6— Adjustment of Status Decision 2. Accordingly, any assertion by the USCIS stating that Plaintiff's order of removal remains unexecuted and that she is still in removal proceedings is legally and factually erroneous based on the USCIS's own conclusions. *Id.*

46. Plaintiff wishes to note that the USCIS's conclusion that she can adjust her status with the immigration court is likewise legally erroneous. As noted above, the immigration court only has jurisdiction over an "arriving alien's" adjustment of status application if the alien: (1) properly filed the application with the USCIS while the alien was in the United States; (2) departed and returned to the United States pursuant to a grant of advance parole; (3) the application was denied by the USCIS; *and* (4) the DHS placed the alien in removal proceedings *after* the

14

alien's return to the United States on advance parole or *after* the application was denied. 8 C.F.R. § 1245.2(a)(1)(ii).

47. The immigration judge does not have jurisdiction over any I-485 Application that Plaintiff might file in removal proceedings because she filed her adjustment of status application with the USCIS *after* she departed and returned to the United States on parole, not before, and she did not return to pursue that application. *See Matter of Silitonga*, 25 I&N Dec. 89 (BIA 2009) (finding that under the regulations, "Immigration Judges have no jurisdiction to adjudicate an application filed by an arriving alien seeking adjustment of status, with the limited exception of an alien who has been placed in removal proceedings *after* returning to the United States pursuant to a grant of advance parole to pursue a *previously filed* application.") (emphasis added). As such, while the DHS can certainly initiate new removal proceedings against Plaintiff, she will simply not be able to pursue adjustment of status with the immigration judge.

48. In sum, given the law and evidence presented, Plaintiff maintains that judicial review under the APA is proper in this case because the USCIS has acted arbitrarily, capriciously, has abused its discretion, and has not acted in accordance with the law.

## VII.   EXHAUSTION

49. Plaintiff incorporates by reference the allegations in paragraphs 1-48.

50. As noted above, Plaintiff is not required to exhaust her administrative remedies with respect to the denial of her I-485 Application because she is contesting a "final" agency action that is subject to judicial review under the APA.

51. The language of 5 U.S.C. § 704 states that an agency action is "final" without regard to whether an alien seeks reconsideration or appeal to a higher agency authority, *unless* there is a statute or regulation that requires the alien to file an appeal and the agency action is inoperative during the appeal.

52. In this case, the USCIS denial stated that Plaintiff had the opportunity to file an I-290B, Motion to Reopen, Reconsider, or Appeal. *See* Exhibit 1, *supra*. However, as the relevant regulations note, even if an I-290B was filed, the USCIS's decision would have been considered the final agency decision. *See* 8 C.F.R. § 103.5(a)(1)(iv) (noting that the filing of a motion to reopen or reconsider "does not stay the execution of any decision in a case"); *see also Darby*, 509 U.S. at 137. As such, there can be no judicially-imposed exhaustion requirement and judicial review is proper before this Court.

## VIII. CONCLUSION

53. For the aforementioned reasons, the decision to deny Plaintiff's I-485 Application was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. Therefore, judicial review by this Court is warranted under the APA.

## IX.   PRAYER FOR RELIEF

54. Wherefore, Plaintiff respectfully requests that this Court:

   a.  accept jurisdiction and venue as proper;

   b.  issue a declaratory judgment that the denial of Plaintiff's I-485 Application
       was arbitrary, capricious, an abuse of discretion, and not in accordance
       with the law;

   c.  issue a declaratory judgment that the USCIS has jurisdiction to adjudicate
       Plaintiff's I-485 Application;

   d.  issue an order under the APA to compel the USCIS to reopen and
       adjudicate Plaintiff's I-485 Application on the merits;

   e.  grant reasonable attorney's fees, expenses, and costs of court pursuant to
       the Equal Access to Justice Act, 28 U.S.C. § 2412; and

   f.  grant Plaintiff all other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Raed Gonzalez*
_____
Raed Gonzalez, Esq.
Texas Bar No. 24010063
GONZALEZ OLIVIERI LLC
2200 Southwest Freeway, Suite 550
Houston, TX 77098
Phone: (713) 481-3040,
Fax: (713)588-8683
rgonzalez@gonzalezolivierillc.com
*Counsel of Record for Plaintiff*

17

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

Marvin Isabel Hernandez,

    *Plaintiff*,

        v.

Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security; Kenneth T. Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services; Wallace L. Carroll, Houston Field Office Director of the U.S. Citizenship and Immigration Services,

    *Defendants*.

Case No. 4:20-cv-2852

Date: August 14, 2020

---

## INDEX OF EXHIBITS

---

Exhibit 1—Denial Decision
Exhibit 2—Previous USCIS Policy Manual
Exhibit 3—Previous USCIS Policy Memorandum
Exhibit 4—Parole Document
Exhibit 5—Adjustment of Status Decision 1
Exhibit 6—Adjustment of Status Decision 2

18